Margarita Mercado Riera et al., demandantes y recurrentes, *v.* Mario Mercado Riera y Otros, demandados y recurridos.

*Número:* R-71-158      *Resuelto:* 24 de octubre de 1972

942

*Benjamín Ortiz* y *Charles R. Cuprill,* abogados de Mario Mercado Riera, su esposa María Luisa Parra de Mercado, Eufemia Eileen Mercado Parra y su esposo H. Murray O'Hanlon; *José M. González Romanacce,* abogado de Adriana Luisa Mercado Parra y su esposo Patrick J. Wilson; *Carlos E. Colón,* abogado de la Sociedad en sindicatura Mario Mercado e hijos; *Sara Torres Peralta,* abogada de la Sucesión de Adrián Mercado Riera, compuesta de Daysi J. Vda. de Mercado y Adrián, José, María y Luis Alberto Mercado Jiménez.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Debemos resolver si procede la defensa de cosa juzgada en una acción de daños y perjuicios porque tales daños pudieron y debieron reclamarse en una anterior acción en que se decretó la disolución de una sociedad entre los actuales litigantes debido a las alegadas actuaciones dolosas del recurrido Mario Mercado Riera que se afirma causaron "graves e incalculables perjuicios a la sociedad y a sus socios" (los recurrentes eran socios de dicha sociedad), enumerándose en la sentencia de disolución las numerosas actuaciones perjudiciales del referido recurrido así como la restitución por su parte a la sociedad de varias y sustanciales cuantías de fondos.

Concluimos que debe confirmarse la sentencia del tribunal de instancia que declaró con lugar la defensa de cosa juzgada y, en tal virtud, desestimarse la demanda.

El 26 de mayo de 1967, el Tribunal Superior de Puerto Rico, Sala de Ponce, emitió una opinión y sentencia en el pleito Civil Núm. CS-57-2295 decretando la disolución de la Sociedad Mario Mercado e Hijos, compuesta por el socio gestor Mario

Mercado Riera y sus hijas Eufemia Eileen y Adriana Luisa con una participación de 57.50%; Margarita Mercado Riera (11.25%); Pastor S. Mandry (10.00%); y la Sucesión de Adrián Mercado Riera (21.25%). En la parte dispositiva de la sentencia de disolución se provee, además, que Mario Mercado Riera pagará a la sociedad las sumas de (a) $207,000 por el uso de una finca para su negocio de caballos, (b) el montante de determinada contribución, y (c) $144,760.79 de intereses adeudados; que la sociedad pagará a los demandantes determinadas cantidades por concepto de intereses y determinada cantidad a María Margarita Jiménez Vda. de Mercado.

Figuraron en el mencionado pleito Margarita Mercado Riera y su esposo Salvador S. Mandry Espinosa y Pastor S. Mandry Mercado como demandantes. Como demandados se incluyó a Mario Mercado Riera y su esposa María Luisa Parra Capó, Adrián V. Romano y José Rafael Mercado Jiménez, María Margarita, conocida por Daisy Jiménez Vda. de Mercado, por sí y como madre investida con patria potestad sobre sus menores hijos Mario y Luis Alberto, de apellido Mercado Jiménez, por sí y asistidos de su señora madre con patria potestad sobre ellos, la Sociedad Mario Mercado e Hijos; Eufemia Eileen Mercado Parra y Adriana L. Mercado Parra y sus respectivos esposos H. Murray O'Hanlon y Patrick Wilson.

Así las cosas, el 20 de agosto de 1970 Margarita Mercado Riera, Salvador Mandry y Pastor S. Mandry Mercado radicaron en el Tribunal Superior de Puerto Rico, Sala de Ponce, una acción civil contra Mario Mercado Riera en reclamación de daños y perjuicios por la cantidad de $10,927,-661.72, alegadamente causádoles por las actuaciones del demandado como socio gestor de Mario Mercado e Hijos (Civil Núm. CS-70-3359). El 25 de septiembre de 1970 se enmendó la demanda a los efectos de hacer alegaciones alternativas de pleito de clase a favor de los miembros de la Sucesión de

Adrián Mercado Riera (Daisy Jiménez Vda. de Mercado y los hijos habidos en el matrimonio llamados Adrián, Mario, José y Luis Alberto, de apellidos Mercado Jiménez) o para incluirlos como demandados. Se incluyó, además, a nuevas partes demandadas, de tal modo que las partes demandadas son:

"(1) Mario Mercado Riera y su esposa doña María Luisa Parra de Mercado, por sí, como miembros de la Sucesión de Mario Mercado Parra y socios de la Sociedad Mario Mercado e Hijos, bajo Sindicatura.

(2) Eufemia Eileen Mercado Parra y su esposo H. Murray O'Hanlon como usufructuarios de bienes pertenecientes a la dicha Sociedad Mario Mercado e Hijos.

(3) Adriana Luisa Mercado Parra y su esposo Patrick Wilson como usufructuarios de bienes pertenecientes a la dicha Sociedad Mario Mercado e Hijos.

(4) Jesús M. Guzmán en su carácter de Síndico designado por el Tribunal Superior de Ponce de la Sociedad Mario Mercado e Hijos en liquidación."

Entre las alegaciones de la demanda en el pleito de daños y perjuicios (Civil Núm. CS-70-3359), se dice que se une y se hace formar parte de la demanda como si literalmente se transcribiera copia fiel y exacta de la sentencia dictada en el pleito de disolución de sociedad (CS-57-2295), la cual se identifica como Exhibit 1. Se hacen en dicha demanda, además, alegaciones específicas sobre las actuaciones dolosas del demandado como socio gestor de la sociedad disuelta que causaron los daños alegados. (1)

---

(1)".      .      .      .      .      .      .      .

DÉCIMA: El demandado, Mario Mercado Riera, además de socio mayoritario, a partir del año de 1937 fue designado y ha representado a la sociedad como director y socio gestor de la misma, hasta su disolución.

UNDÉCIMA: Conforme la sentencia que motivó la disolución de esta sociedad, el demandado, Mario Mercado Riera, en su carácter de socio gestor, y amparándose en su condición de socio mayoritario, utilizó 'para lucro personal los recursos de la Sociedad', ocasionando 'graves perjuicios con ese motivo tanto a la entidad como a dichos socios.' (Exhibit I, Determinaciones de Derecho 1, inciso (c).)

Alegaron los demandados, como defensa, que la sentencia dictada en el pleito de disolución de sociedad opera como cosa juzgada sobre el presente pleito de daños y perjuicios. El Tribunal Superior así lo entendió también y dictó sentencia

---

DUODÉCIMA: Conforme los propios términos de la sentencia aludida, entre otros actos, el demandado Mario Mercado Riera, como socio gestor de la Sociedad Mario Mercado e Hijos, hizo negocios que envolvieron sumas sustanciales de dinero con la corporación Southern Transport, Inc., de la que dicho demandado era su presidente y principal accionista, según la mejor información de los demandantes y de la que también formaban parte como accionistas y directores los codemandados Adriana L. y Eufemia Eileen Mercado Parra y sus respectivos esposos. Los referidos negocios tuvieron el efecto tal como concluyó el Tribunal Superior de Ponce en la sentencia antes citada 'de permitir al socio gestor operar un negocio privado para beneficio suyo y de sus hijos siendo su cliente exclusivo la Sociedad que era la misma entidad que le había facilitado el equipo necesario para tal empresa.' (Exhibit I, Determinaciones de Hecho, 8.)

DECIMOTERCERA: En la sentencia referida el Tribunal Superior de Ponce concluye 'que las actividades de la Sucesión de Mario Luis Mercado Parra por sí y/o a través de la Southern Transport, Inc., eran actividades efectuadas por el socio gestor Mario Mercado Riera y para beneficio propio y de sus hijas Eileen y Adriana Luisa.' (Exhibit I, Determinaciones de Hecho, 8(f).)

DECIMOCUARTA: Igualmente mediante un 'método ilegal', según lo califica el Tribunal Superior de Ponce, en la sentencia citada, Determinaciones de Hecho Núm. 15, pág. 29, el demandado creó una cuenta titulada 'Fondo de Reserva', utilizando para ello indebidamente, los beneficios que tenía que haber distribuido, 'cuenta arbitrariamente controlada por Mario Mercado Riera', manejada para su propio beneficio y en detrimento de los intereses y 'beneficios que por disposición contractual tenía que haber distribuído entre los socios en la forma que dispone el contrato.'

DECIMOQUINTA: La conducta y 'método ilegal' del demandado, Mario Mercado Riera, al 'abrogarse para sí la facultad de disponer por su cuenta de los beneficios no distribuídos pertenecientes a los demás socios, el socio gestor incurrió en una crasa violación del contrato social.' (Exhibit 1, Determinaciones de Hecho, Núm. 17.)

DECIMOSEXTA: El 'método ilegal' aludido, o 'la crasa violación de ley' del demandado Mario Mercado Riera, por el concepto aludido, al crear un Fondo de Reserva para su propio beneficio, en conflicto con lo estatuido en el contrato social, ha ocasionado daños económicos a los aquí demandantes, en términos de su participación social de un 21.25% y de pérdida a razón de un 10% anual acumulativo, en una suma aproximada de CUATRO MILLONES CUATROCIENTOS DIECINUEVE MIL TRESCIENTOS DIECIOCHO DÓLARES CON SESENTA CENTAVOS ($4,419,318.60).

DECIMOSÉPTIMA: Procede igualmente en su día la determinación por

de conformidad desestimando la demanda. Es contra esa determinación que se interpuso el presente recurso de revisión.

El tribunal de instancia basó su conclusión en que "No hay duda de que la causa de acción que se pretende ejercitar

este Honorable Tribunal de daños punitivos contra el demandado, Mario Mercado Riera, por una suma adicional de $4,419,318.60, ya que el propio Tribunal Superior de Ponce determinó, tras analizar los 'métodos ilegales' del demandado en la dirección de la Sociedad, que en detrimento de las acciones y derechos de los aquí demandantes, 'la Central Rufina se opera única y exclusivamente para beneficio de Mario Mercado y sus hijas' y que 'lo que en realidad Mario Mercado Riera ha hecho es poner a su servicio personal el capital de la Sociedad y en particular el de los socios minoritarios', siendo esta situación continua e ininterrumpida por 30 años. (Exhibit I, Determinaciones de Hecho, Núm. 19, pág. 42.)

DECIMOCTAVA: El demandado—Mario Mercado—durante su gestión en la Sociedad Mario Mercado e Hijos, se negó a distribuir en forma razonable los beneficios pertenecientes a los socios mientras 'Mario Mercado disfrutaba directamente de los beneficios de la Sociedad', teniendo 'crédito abierto en la Sociedad a su entera disposición, el cual utilizaba liberalmente para su beneficio personal.'

DECIMONOVENA: Tal conducta culposa del demandado Mario Mercado causó 'graves perjuicios económicos.' (Determinaciones de Derecho, Núm. 3, pág. 54,) a los aquí demandantes, viéndose estos obligados a disponer de otros valores y acciones que en el devenir del tiempo le han ocasionado pérdidas por una suma no menor de doscientos noventitrés mil ciento cuarentiún dólares con treinta centavos ($293,141.30), reclamables al aquí demandado, Mario Mercado Riera.

VIGÉSIMA: Así también adeuda el demandado—Mario Mercado Riera —en concepto de principal e intereses a los aquí demandantes, doña Margarita Mercado Riera, Don Salvador Mandry y don Pastor S. Mandry Mercado, la suma de $295,883.22 como resultado de actuaciones culposas y/o crasamente negligentes del demandado, refrendadas por actos y reuniones de la Junta de Directores, declaradas 'nulas y carentes de eficacia jurídica de clase alguna' por el Tribunal Superior de Ponce, en la sentencia dictada por éste. (Exhibit I, Determinaciones de Derecho, Núm. 4, pág. 56.) La nulidad de dichas actuaciones del demandado surgen 'al ignorar toda notificación al socio José Rafael Mercado Jiménez' y permitir ilegalmente la ingerencia en los asuntos de la Sociedad de dos hijas del demandado, Eufemia Eileen y Adriana Luisa Mercado Parra, quienes no eran dueñas en pleno dominio de interés social alguno. (Exhibit I, Determinaciones de Derecho, Núm. 4, pág. 56.) La ingerencia y participación de las codemandadas Eufemia Eileen y Adriana Luisa Mercado Parra con sus respectivos esposos en las transacciones, negociaciones y actuaciones realizadas de común acuerdo con el codemandado Mario Mercado Riera y

ahora existía cuando se radicó la demanda original y debió plantearse entonces."

La defensa de cosa juzgada se incorpora en nuestra jurisdicción en el Art. 1204 del Código Civil (31 L.P.R.A. sec. 3343). Dispone dicho artículo que:

a sabiendas de que las mismas eran 'nulas y carentes de eficacia jurídica de clase alguna' las hicieron beneficiarias de fuertes sumas de dinero, las que en su día podrá determinar este Tribunal, luego de presentada la prueba a tales efectos y cuyas sumas de dinero obtuvieron para sí las codemandadas con exclusión absoluta de los demandantes a quienes correspondía una participación igual a la que se alega en el hecho cuarto de la demanda y por un total de 42.50%. Alegan los demandantes que estos beneficiarios vienen obligados a restituir la suma indebidamente obtenida por ellos a los demandantes, así como sus intereses desde las fechas respectivas en que recibieron el dinero y hasta su total pago; y alegan asimismo que por estos conceptos causaron daños a los demandantes en una suma no menor de DOSCIENTOS MIL DÓLARES ($200,000.00).

VIGESIMOPRIMERA: La 'actitud de intransigencia del socio mayoritario', según la califica en su sentencia este Honorable Tribunal (Exhibit 1), su conducta dictatorial en el manejo de los asuntos de la Sociedad, el absoluto desprecio hacia los derechos legítimos de los aquí demandantes, 'la operación real de la Central Rufina como entidad primariamente al servicio del socio gestor y su inmediata familia', 'el control a que el socio mayoritario ha mantenido sometido a los socios minoritarios'—'situación que se ha mantenido por treinta años', además de las graves pérdidas económicas causadas a los aquí demandantes, les ha ocasionado a éstos grandes frustaciones [sic], inenarrables daños mentales y morales, les ha afectado permanentemente su salud física y emocional, habiendo sido en diversas ocasiones recluidos en hospitales para recibir doloroso tratamiento médico, todo ello debido a la conducta dolosa y crasamente negligente del demandado Mario Mercado Riera en el manejo ilegal de los asuntos de la Sociedad Mario Mercado e Hijos. Alegan los demandantes que las codemandadas Eufemia Eileen y Adriana Luisa Mercado Parra, al grado que participaron con su padre Mario Mercado Riera de los beneficios que éste indebidamente les hizo como resultado de las operaciones de la Central Rufina son también responsables de los daños que por este concepto se causó a los demandantes y adeudan a éstos las cantidades que indebidamente tomaron para sí como resultado de estas operaciones, cantidad que determinará el Tribunal en su día luego de presentada la prueba. Se valoran por este concepto los daños y perjuicios sufridos por los demandantes en una suma no menor de QUINIENTOS MIL DÓLARES ($500,000.00) para cada uno de los tres demandantes.

VIGESIMOSEGUNDA: Se hace formar parte demandada en esta acción a la Sindicatura de Mario Mercado e Hijos en mérito de que muchas de las actuaciones de dicho Mario Mercado Riera fueron mientras actuaba como socio gestor de dicha Sociedad, pero entendiéndose que no se está haciendo

"Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."

Alegan los recurrentes que la defensa de cosa juzgada no puede prosperar por no existir ni identidad de partes ni de causa de acción.

Es evidente de lo ya expuesto que existe identidad de partes entre los litigantes en la acción de disolución de sociedad y los litigantes en la causa que nos ocupa. Los demandantes son los mismos: Margarita Mercado Riera y su esposo Salvador S. Mandry y Pastor S. Mandry Mercado. En el anterior caso de disolución los demandados fueron Mario Mercado Riera y su esposa María Luisa Parra Capó, la Sucesión de Adrián Mercado Riera compuesta por Adrián V., José Rafael, María Margarita, Luis Alberto, todos de apellidos Mercado Jiménez, y la viuda Daisy Jiménez Vda. de Mercado, Eufemia Eileen Mercado Parra y su esposo H. Murray O'Hanlon, Adriana L. Mercado Parra y su esposo Patrick Wilson y la Sociedad Mario Mercado e Hijos. En el presente pleito, según se desprende de la demanda enmendada, los demandados son Mario Mercado Riera y su esposa María Luisa Parra, Eileen Eufemia Mercado Parra y su esposo H. Murray O'Hanlon, Adriana L. Mercado Parra, y su esposo Patrick Wilson, Jesús M. Guzmán, en su carácter de síndico de Mario Mercado e Hijos. Además, Adrián, María, José y Luis Alberto, todos Mercado Jiménez y la viuda Daisy Jiménez, quienes componen la Sucesión de Adrián Mercado Riera y deben considerarse como demandados ya que, como

---

alegación alguna contra los demás socios de la Sociedad Mario Mercado e Hijos y a los fines de que el Síndico de Mario Mercado e Hijos esté debidamente notificado de esta acción y pueda el Tribunal dictar para su acatamiento las órdenes que correspondan para garantizar los derechos de los demandantes y la efectividad de la sentencia que en su día pueda dictar este Honorable Tribunal a favor de los demandantes."

correctamente concluyó el tribunal de instancia, el presente no puede considerarse como pleito de clase.

■ No son aplicables los casos de *Camacho* v. *Iglesia Católica*, 72 D.P.R. 353 (1951) e *Irizarry* v. *Díaz Ojea*, 35 D.P.R. 144 (1926), citados por los recurrentes. En el primero se decidió que una sentencia dictada en un pleito por quebrantamiento de contrato contra la Congregación de la Misión de los Padres Paúles no tiene el efecto de cosa juzgada sobre una acción ulterior por el mismo fundamento contra la Iglesia Católica por no haber identidad de personas. Se trataba en ese caso de dos entidades jurídicas distintas. En el segundo caso citado se trataba de una acción inicial por la esposa que correspondía en realidad a la sociedad de gananciales. En consecuencia, la sentencia dictada en dicho pleito no opera como cosa juzgada sobre una acción posterior iniciada por el marido como Administrador de la sociedad de gananciales. En el presente caso, por el contrario, concurren las mismas partes en la misma calidad[2] con la única excepción de Jesús M. Guzmán, quien es una parte nominal al comparecer como síndico en representación de Mario Mercado e Hijos. Véase *Sucn. Zayas Berríos* v. *Berríos*, 90 D.P.R. 551 (1964).

Apuntan los recurrentes que no hay identidad de causas pues en el primer caso la acción la iniciaron varios socios contra la entidad social para lograr su disolución mientras que el presente litigio lo iniciaron los recurrentes que habían sido tales socios en contra del que fue gestor de la sociedad por los daños que sus actuaciones dolosas y culposas ocasionaron a los recurrentes y que dieron lugar a la disolución de la sociedad. Afirman, además, que no existe identidad entre las

---

[2] "La calidad en que las partes lo fueron se refiere a su relación con los derechos y acciones que ejercitan, y así cabrá que renueve un litigio el que por derecho propio reclamó una cosa, si luego lo hace como mandatario, cesionario o heredero de otra persona." Manresa, *Comentarios al Código Civil Español*, Tomo VIII, Vol. II, págs. 243–244 (Quinta Edición, 1950). En el pleito de disolución, como en el presente, los demandados no ostentaban representación alguna, sino su propia persona y patrimonio.

cosas objeto de ambos litigios. Sostienen que en el primero la controversia giraba en torno a la entidad misma, la sociedad; que el objeto del presente caso, por el contrario, es el resarcimiento económico de los daños sufridos por los demandantes.

A los fines de resolver, debemos examinar el estado de nuestra doctrina sobre la referida cuestión.

Sobre la identidad de cosas nos dice Scaevola que:

"Puede tratarse de la absoluta identidad, en el sentido de que el segundo pleito se refiera a la finca u objeto mismo sobre que versó el primero, pero en general *basta que se refiera al mismo asunto, aunque en el uno se abordase totalmente y sólo parcialmente en el otro,* y aunque las cosas hayan sufrido disminución o alteración, desde el primero al segundo, que afecte su valor o alguna otra de sus condiciones." (Énfasis nuestro.) *Código Civil,* Tomo XX, pág. 534 (2da. ed., 1958).

Manresa, por otro lado, señala que:

"Cuando se reclaman derechos (verbigracia, usufructo, posesión, uso, etc.) puede una misma cosa ser objeto de diferentes litigios, *salvo el caso de fundarse todos esos derechos en una misma causa ya resuelta, verbigracia, un mismo contrato declarado nulo."* (Énfasis nuestro.) *Op. cit.,* supra, a la pág. 237.

Ambos litigios, sin lugar a dudas, giran en torno al incumplimiento por el socio gestor del contrato de sociedad. La especificación que proponen los recurrentes en cuanto al objeto de ambos litigios conlleva una identificación errónea entre el remedio solicitado y la cosa envuelta en los dos pleitos.

■ La doctrina de cosa juzgada impide que se litigue en un pleito una reclamación que pudo haberse litigado y adjudicado en un pleito anterior entre las mismas partes, y sobre la misma causa de acción. *Isaac Sánchez* v. *Universal C.I.T. Credit,* 95 D.P.R. 372, 382 (1967); *Riera* v. *Pizá,* 85 D.P.R. 268, 274 (1962); *Capó Sánchez* v. *Srio. de Hacienda,* 92 D.P.R. 837 (1965); *Sastre* v. *Cabrera,* 75 D.P.R. 1, 3 (1953). No existe controversia alguna en cuanto a que la reclama-

ción de daños y perjuicios pudo haberse litigado y adjudicado en el anterior pleito de disolución de sociedad.(³) La controversia gira en torno a si tuvieron que haberse acumulado. Es decir, si constituyen o no una misma causa de acción.

■ La jurisprudencia norteamericana no es clara ni uniforme en la fijación de criterios para determinar lo que es una causa de acción a los efectos de la doctrina de *res judicata*. Véanse, *Developments in the Law—Res Judicata*, 65 Harv. L. Rev. 818, 824 (1952), Schopflocher, *What Is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata?* 21 Ore. L. Rev. 319 (1942). Moore señala que son varios los criterios sugeridos para la determinación de lo que es una causa de acción para propósitos de la doctrina de cosa juzgada. Algunos de ellos, apunta, son (1) si el mismo derecho ha sido infringido por la misma violación, (2) si hay una identidad tal que una sentencia diferente en la segunda acción destruiría o afectaría derechos o intereses establecidos por la primera sentencia, (3) identidad de fundamentos, (4) si la misma evidencia sostendría ambas sentencias.

■ Por otro lado Manresa, en su ya citada obra, a las págs. 237–238 y 240, señala que:

"Para los efectos de la cosa juzgada, la palabra *causa* tiene un sentido que no es de razón o motivo de un contrato o acto jurídico. Significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes." (Énfasis en el original.)

Si bien, como antes dijimos, es en general posible el ejercicio sucesivo de diferentes acciones, podrá constituir lo primeramente resuelto cosa juzgada para el segundo pleito, cuando la nueva acción estuviera como embebida en la primera, o fuese

---

(³) Véase el Art. 104 del Código de Enjuiciamiento Civil de 1904, 32 L.P.R.A. sec. 533, inciso 1, vigente cuando se inició la acción de disolución en 9 de octubre de 1957. También son acumulables bajo la Regla 14 de las de Procedimiento Civil de 1958. Véanse, Moore, *Federal Practice*, Vol. 1B, sec. 0.410, págs. 1151–1163, y *Capó v. A. Hartman & Cía.*, 57 D.P.R. 196 (1940).

consecuencia inseparable de la misma: así, desestimada la petición de un supuesto condueño reclamando la copropiedad que se le niega, es lógico que aquél no podrá ejercitar luego la acción para pedir la división de la cosa común, etc."

Scaevola, en su ya también citada obra, a la pág. 535, informa que "La causa es el motivo de pedir."

■ No se puede, sin embargo, identificar el fundamento, razón o motivo de pedir con el remedio solicitado como pretenden los recurrentes. Tal enfoque permitiría a los litigantes escindir sus acciones en tantos pleitos como remedios a que tuviesen derecho. En *Millán* v. *Caribe Motors*, 83 D.P.R. 494, 507 (1961), este Tribunal señalo que:

"Se ha dicho que la mejor prueba para determinar si una sentencia anterior es un impedimento para una acción subsiguiente es inquirir si la misma evidencia sería suficiente para sostener ambas acciones. Si para sostener las distintas acciones se necesita evidencia distinta entonces se trata de causas de acción diferentes y la primera sentencia no es impedimento para litigar la otra causa de acción. Freeman [*Law of Judgments*, 5th ed.], 687."

Véase, *Hernán Corales Irizarry, etc.* v. *International Harvester Company of Puerto Rico*, R-70-106, Sentencia de 12 de febrero de 1971.

■ Un análisis del pleito de disolución y de la demanda radicada en el presente pleito de daños y perjuicios, demuestra que ambas reclamaciones se fundan en las actuaciones del socio gestor en violación del contrato de sociedad. La prueba necesaria para establecer ambas reclamaciones es idéntica. Las alegaciones que en la demanda en el actual pleito van dirigidas a sostener la reclamación de daños y perjuicios se fundan en conclusiones de hecho y de derecho emitidas en el pleito de disolución. La única prueba adicional necesaria iría dirigida a establecer la cuantía de los daños reclamados. Lo que se pretende es obtener un remedio adicional. El remedio, sin embargo, no es un elemento integrante de la causa de

acción, de manera que no procede una acción de daños basada en un derecho adjudicado en un pleito anterior entre las mismas partes en el cual debieron reclamarse los daños. *Bankers Life & Casualty Company* v. *Kirtley,* 338 F.2d 1006, 1011 (8th Cir. 1964); *Masterkraft Lamp Company* v. *Mortex,* 183 N.E.2d 12 (App.Ct. Ill. 1962); *De Monbrum* v. *Sheet Metal Workers International Ass'n.,* 295 P.2d 881, 887 (DC of App. Cal. 1956); *Reno Club* v. *Harrah,* 260 P.2d 304, 306 (Nev. 1953); *Bond* v. *Thruston,* 98 P.2d 343, 345, 100 P.2d 74 (Nev. 1940). Véanse, además, *McCafrey* v. *Wiley,* 230 P.2d 152, 155 (D.C. of App. Cal. 1951); *Lane* v. *Page,* 251 P.2d 1078 (Colo. 1952); *Blum* v. *William Goldman Theatres,* 174 F.2d 914 (3d Cir. 1948); *Kraft* v. *Forrest Park Realty & Insurance,* 142 S.E.2d 402 (Ct. of App. Ga. 1965); y la anotación *Decree, granting or refusing injunction as res judicata in action for damages in relation to matter concerning which injunction was asked in first suit,* 26 A.L.R.2d 446.

Señalan los recurrentes, citando a *Pérez* v. *Bauzá,* 83 D.P.R. 220, 226 (1961), que la defensa de cosa juzgada no se debe aplicar en forma inflexible cuando hacerlo derrotaría los fines de la justicia, especialmente si hay consideraciones de orden público. Sin embargo, a diferencia de *Pérez* v. *Bauzá* en que se trataba de una acción de filiación revestida de interés público, se trata de relaciones puramente privadas entre las partes que no justifican una desviación del efecto normal de la cosa juzgada.

En el pasado, a los fines de hacer cumplida justicia o cuando ha habido envueltas consideraciones de orden público, este Tribunal se ha apartado de la doctrina previamente expuesta sobre la identidad de causas. Así, en *Millán,* supra, en que confirmamos la sentencia declarando con lugar una acción de rescisión de un contrato de venta condicional de un camión y daños y perjuicios con posterioridad a la reposesión del camión por la vendedora basándose en atrasos en los pagos

bajo dicho contrato, y nos negamos a aplicar la doctrina de cosa juzgada o la de impedimento colateral, dijimos que:

". . . Debido a la naturaleza antes dicha de este procedimiento [el de reposesión] no podemos exigir de manera inflexible que se litiguen en él otras causas de acción ajenas a la reposesión. Las circunstancias de un caso como éste en que además de existir defectos formales fatales en el contrato—por ir contra la ley expresa fundada en motivo de orden público—concurre también el elemento del dolo, justifican apartarse, por excepción, de la norma general del caso de Mattei . . . . [*Mattei* v. *Maldonado*, 70 D.P.R. 468 (1949)]."

Reafirmamos lo dicho en *Millán*, supra, en nuestra Sentencia de 12 de febrero de 1971 en *Corales Irizarry* v. *International Harvester Company of Puerto Rico*, supra, en la cual dijimos que la orden de reposesión no constituía cosa juzgada en la subsiguiente acción de rescisión de contrato y daños y perjuicios por haber sido vendido el vehículo con vicios ocultos sustanciales.

En *Pérez* v. *Bauzá*, supra, dijimos que:

"Sin embargo, los tribunales se han negado a aplicar en forma inflexible la defensa de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones de orden público. . . . Según se ha expresado, la doctrina descansa en el principio básico de que debe propiciarse la terminación de litigios, pero si la aplicación rigurosa de la misma derrotaría en la práctica un derecho permeado en alguna forma del interés público, los tribunales se inclinan hacia la solución que garantice cumplida justicia, en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal . . . . En otras palabras, la regla no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso.

Es indudable que la acción de filiación, vehículo que concede la ley para establecer el status familiar del ciudadano, está revestida de un gran interés público, y tiene hasta tangencias constitucionales si se quiere, por lo que con ello afecta la dignidad del individuo."

Hemos resuelto dos casos en que nos negamos a aplicar la doctrina de cosa juzgada porque, no obstante ser la segunda acción acumulable a la primera, el no haberla acumulado no constituía una renuncia de la reclamación de daños y perjuicios porque es potestativo para el demandante la acumulación de acciones. Dichos casos son los de *Blanco* v. *La Capital*, 77 D.P.R. 642, 647 (1954), y *Capó* v. *A. Hartman & Cía.*, supra. En *Blanco* concluimos que la sentencia en una acción sobre aclaración de título de un solar no constituía cosa juzgada en otra acción de daños y perjuicios por haberse privado al dueño de dicho solar de su uso durante varios años. Justificamos en este caso el apartarnos de la norma aceptada de aplicar la doctrina de cosa juzgada aduciendo al efecto la razón que expusimos en *Capó*, supra, para no aplicarla a una acción sobre reclamación de frutos que no se acumuló a la acción previa de reivindicación de la finca, razón que citamos previamente, es decir, que tal acumulación es potestativa para el demandante.

Creemos que estos casos deben revocarse. En casos como éstos, y como el que nos ocupa, en que no existen circunstancias como en *Millán*, supra, y *Pérez* v. *Bauzá*, supra, lo que debemos determinar es si las dos acciones constituyen o no una misma causa de acción. Por los fundamentos previamente expuestos concluimos que sí.

Por las razones expuestas, *debemos confirmar la sentencia dictada por el Tribunal Superior, Sala de Ponce, en este caso, en 13 de mayo de 1971.*

El Juez Presidente Interino, Señor Pérez Pimentel, y los Jueces Asociados, Señores Torres Rigual y Martín, concurren en el resultado. El Juez Asociado, Señor Hernández Matos, no intervino.