Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| PR Asset Portfolio 2013-1 International LLC<br><br>Apelada<br><br>v.<br><br>One Alliance Insurance Corporation<br><br>Apelante | KLAN202400822[1] | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. SJ2019CV10747 (Sala 407)<br><br>Sobre. Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Comparece ante nos One Alliance Insurance Corporation (parte apelante o One Alliance) y nos solicita la revisión de la *Sentencia* emitida el 26 de junio de 2024 y notificada el 28 de junio del corriente, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI de Carolina o foro primario), la cual declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por PR Asset Porfolio 2013-1 International, LLC (parte apelada o PRAPI).

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

**I.**

La controversia argüida en la apelación tuvo su origen el 6 de septiembre de 2019, ante el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI de San Juan), cuando PRAPI presentó la

---

[1] El recurso de epígrafe fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones.

Demanda Original[2]. No obstante, el 17 de septiembre de 2019, el TPI de San Juan emitió una orden para separar las causas de acción y abrir nuevos casos en las diferentes regiones judiciales, así pues, el 12 de febrero de 2020, PRAPI presentó la correspondiente Demanda Enmendada[3] ante el TPI de Carolina[4], conforme a la orden emitida.

Las alegaciones de la Demanda Enmendada[5] tenían como propósito identificar las propiedades sitas en la región judicial de Carolina. PRAPI adujo que posee varias propiedades residenciales y comerciales que sufrieron daños como consecuencia del paso del huracán María por Puerto Rico. Toda vez que las propiedades estaban aseguradas mediante las pólizas número 75-28-000001258 y 75-28-000001259, expedidas por One Alliance, PRAPI sometió la correspondiente reclamación. Las referidas pólizas proveían cubierta, entre otras, a ocho (8) propiedades sitas en la región judicial de Carolina, a saber:

Municipio de Canóvanas:
  1st Claims Submission
  40557 Pr 186 Km 7.5 Bo Cubuy, Canóvanas, Puerto Rico
  40724 Pr 185 Campo Rico Ward, Canóvanas, Puerto Rico
  40725 Pr 954 Km 0.2 Campo Rico Ward, Canóvanas, Puerto Rico.
  3rd Claims Submission
  40712 73 Palmer St Corner Blanco Sosa St., Canóvanas Puerto Rico

Municipio de Carolina:
  1st Claims Submission
  41328 Lot 3 San Marco Ave, Comandante Industrial Park, Carolina, Puerto Rico
  2nd Claims Submission
  40135 5-C Roberto Clemente Ave. Villa Carolina, Carolina, Puerto Rico
  40267 Urb. Hacienda Real #10 Blq 10, Carolina Puerto Rico

Municipio de Trujillo Alto:
  2nd Claims Submission
  30038 Pr#175, Km 4.6 Trujillo Alto, Puerto Rico

---

[2] Entrada #1 SUMAC.
[3] En cumplimiento con la Orden, PRAPI presentó las correspondientes *Demandas Enmendadas* en las distintas Regiones Judiciales. Las alegaciones y remedios solicitados en las demandas enmendadas eran los mismos, excepto por la descripción de las propiedades y las cuantías reclamadas.
[4] Entrada #2 de SUMAC.
[5] Apéndice 1 del recurso.

Surge del expediente que las partes acordaron atender la reclamación en tres (3) fases: *1st, 2nd* y *3rd Claim Submission.* Con respecto al *1st Claim Submission,* PRAPI arguyó que, One Alliance pagó el ajuste ofertado correspondiente a cuarenta y tres (43) propiedades por la cantidad global de $2,123,198.90. PRAPI aceptó el referido ajuste y oferta de pago de parte de One Alliance para efectos de finiquitar el *1st claim submission.* Así las cosas, el 26 de septiembre de 2018, One Alliance emitió los cheques en pago total del *1st claims submission.*

En o alrededor del 27 de junio de 2018, One Alliance le sometió a PRAPI el ajuste correspondiente al *2nd claim submission* y el 28 de marzo de 2019, las partes llegaron a un acuerdo para 29 de las 64 propiedades del *2nd claim submission,* **incluyendo propiedades sitas en la región judicial de Carolina**. Subsiguientemente, mediante comunicación escrita del 16 de mayo de 2019, One Alliance ajustó la reclamación y ofreció pagarle a PRAPI $1,493,856.59. PRAPI aceptó el referido ajuste y oferta de pago de parte de One Alliance con respecto a las 29 propiedades mientras anticipaba el ajuste y oferta de pago de One Alliance por las restantes 35 propiedades que también formaban parte del *2nd claim submission.* El referido ajuste y oferta de pago fue comunicado por One Alliance a PRAPI mediante correo electrónico del 16 de mayo de 2019. En atención al acuerdo concretado entre las partes, ese mismo día, One Alliance le cursó a PRAPI por correo electrónico las Declaraciones de Pérdida (*Proof of Loss*) que debía suscribir para proceder con los pagos acordados. El 29 de mayo de 2019, PRAPI sometió a One Alliance las correspondientes Declaraciones de Pérdida, del *2nd claim submission* y solicitó el correspondiente pago,

de acuerdo con lo que dispone el Artículo 7(d) de la Regla XLVII (47) del Reglamento del Código de Seguros[6].

Empero, el 20 de junio de 2019, mediante carta, One Alliance se retractó del ajuste efectuado con respecto al *2nd claim submission* y retiró la oferta de pago ya aceptada por PRAPI. One Alliance arguyó que, al momento de realizar el *1st Claim Submision* había incluido trece (13) propiedades que no estaban en los reportes, por lo que PRAPI no poseía un interés asegurable.

PRAPI no estuvo conforme con la postura asumida por One Alliance y se negó a devolver suma de dinero alguna correspondiente a los pagos efectuados y finiquitados el 26 de septiembre de 2018, bajo el *1st claim submission.*

One Alliance no le ha sometido a PRAPI ningún estimado, ajuste, ni ha atendido el *3rd claim submission,* en cuanto a las 2 propiedades sitas en la región judicial de Carolina, a pesar de que le fue sometido hace más de diecisiete (17) meses.

En este sentido, PRAPI estimó los daños correspondientes a treinta y cuatro (34) propiedades en la suma de $3,680,514.19 de lo cual $142,138.44 correspondía a la reclamación sobre la propiedad sita en la región judicial de Carolina, y solicitó el correspondiente pago, sujeto a la aplicación de los correspondientes deducibles. En cuanto a las 35 propiedades del *2nd claim submission* que quedaron pendientes, One Alliance no ha ajustado ni a ofrecido efectuar pago a pesar de que PRAPI sometió su reclamación hace más de diecinueve (19) meses. En este sentido, PRAPI estimó los daños correspondientes a las ocho (8) propiedades en la jurisdicción de Carolina en $184,683.28 y solicita el correspondiente pago, sujeto a la aplicación de los correspondientes deducibles.

---

[6] Reglamento 2080.

Por su parte, One Alliance presentó *Contestación a Demanda Enmendada* el 22 de marzo de 2020. En la misma, aceptó algunos hechos, negó otros y levantó varias defensas afirmativas. Posteriormente, sometió reconvención. Mediante esta, reconoció el pago realizado a favor de PRAPI por *el 1st Claim Submission,* así como la oferta de pago correspondiente a veintinueve (29) propiedades del *2nd Claim Submission.* No obstante, arguyó que el ajuste siempre estuvo sujeto a que posteriormente no surgiera información errónea sobre las propiedades u ocultación de información material para el ajuste de la reclamación. En cuanto al *3rd Claim Sumbission,* One Alliance aseguró que llevó a cabo la investigación correspondiente, pero que hubo la necesidad de re-inspeccionar puesto que existían diferencias en el alcance de los daños directos causados por el huracán. Así, One Alliance alegó en su defensa que PRAPI mintió, ocultó información o deliberadamente sometió información falsa e incompleta en apoyo a sus reclamaciones. Es por esto que señaló procedía la devolución de los pagos realizados por el *1st Claim Submission*; denegar el pago de las reclamaciones restantes y anular la póliza de seguro.

Además de lo anterior, One Alliance reconvino alegando que durante el descubrimiento de prueba obtuvo información relacionada a actuaciones de PRAPI constitutivas de fraude y falsa representación. Así, por ejemplo, alegó que PRAPI no ostentaba interés propietario sobre parte de las propiedades aseguradas, algunas con anterioridad al paso del huracán María, otras, durante el proceso de reclamación y ajuste, y otras, con anterioridad a la presentación de la *Demanda*. Ello, en unión a la ocultación de información sobre las condiciones de las propiedades, los números de catastro y descripción registral de estas. Por tanto, toda vez que PRAPI no poseía un interés asegurable sobre algunas de las propiedades, One Alliance sostuvo que procedía la anulación de la

póliza y la devolución de los pagos realizados en el *1st Claim Submission.*

En lo pertinente a la controversia ante nuestra consideración, el 15 de septiembre de 2023, PRAPI sometió *Moción para que se dicte sentencia sumaria de conformidad a sentencia final y firme en caso relacionado de Caguas por ser cosa juzgada sobre las materias en este pleito*[7]. Alegó que la primera y única sentencia final en los méritos entre las partes es la Sentencia del TPI de Caguas. Esa decisión directamente atiende y resuelve las controversias entre las partes, concede los remedios solicitados por PRAPI y desestima la Reconvención de One Alliance por ser incompatible con ese resultado. Ante ello, solicitó al foro primario que luego de la aplicación de la doctrina de cosa juzgada, emita una Sentencia de conformidad, que conceda los siguientes remedios:

- Declare que la anulación de las pólizas fue invalida;
- Declare que One Alliance no se puede retractar de los ajustes y ofertas del 1st Claim Submission y parte del 2nd Claim Submission;
- Declare que PRAPI no tiene que devolverle a One Alliance suma alguna con relación al 1st Claim Submission;
- Ordene a One Alliance a pagarle a PRAPI los $1,493,856.59 que le debe bajo el acuerdo suscrito entre las partes respecto el 2nd Claim Submission;
- Ordene a One Alliance a culminar el ajuste y pago de las reclamaciones de propiedad incluidas en parte del 2nd Claim Submission y la totalidad del 3rd Claim Submission en un término perentorio;
- Ordene a One Alliance a pagarle a PRAPI los intereses post-sentencia calculados al interés legal de 9.25% según dispone la tabla de intereses aplicables a sentencias judiciales emitida por la Oficina del Comisionado de Instituciones Financieras;
- Ordene a One Alliance a pagarle a PRAPI los intereses pre-sentencia por morosidad, debido a que One Alliance no tenía razón legítima para negarse a satisfacer el ajuste y oferta que le cursó a PRAPI en el 2019;
- Ordene a One Alliance a pagar honorarios de abogado conforme lo requiere el Artículo 27.165 del Código de Seguros, 26 L.P.R.A. § 2716e ("Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado [...] el Tribunal de Primera Instancia [...] deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación") .

---

[7] Entrada #214 de SUMAC.

Por su parte, el 22 de septiembre de 2023, One Alliance presentó *Moción de sentencia sumaria en virtud de la Regla 36.3 de procedimiento civil*[8] y posteriormente, el 22 de noviembre de 2023, se opuso mediante *Oposición a "Solicitud de Sentencia Sumaria" y "Relación de Hechos Materiales Incontrovertidos Apoyando Solicitud de Sentencia Sumaria*[9]*"* en la que alegó la existencia de hechos materiales en controversia, principalmente, sobre las actuaciones constitutivas de fraude y falsa representación incurridas por PRAPI en la tramitación de las reclamaciones.

El 21 de noviembre de 2023, PRAPI sometió *Escrito en oposición a moción de sentencia sumaria de One Alliance en réplica a oposición y solicitud de desestimación de One Alliance y en solicitud de honorarios por temeridad*[10].

Así las cosas, el 28 de junio de 2024, el TPI dictó la *Sentencia*[11] apelada en el caso de autos. El foro primario determinó:

> "[...]resulta evidente que procede dictar Sentencia a favor de PRAPI puesto que las Sentencias emitidas por los Tribunales de Caguas y Fajardo surten efecto de cosa juzgada en este pleito".

En la Sentencia emitida por el Tribunal de Apelaciones, con relación al pleito ventilándose en la Región Judicial de Caguas, se resolvió:

> "Si bien es cierto que, One Alliance presentó Reconvención alegando fraude por parte de PRAPI, el momento para levantar cualquier reclamación era cuando se realizó la investigación de la reclamación y el ajuste, no posteriormente. Nuestro ordenamiento jurídico ha sido enfático en que al emitir la oferta el asegurador expresa haber sido diligente y realizado una investigación sobre la reclamación incoada. Además, One Alliance no demostró que hayan surgido circunstancias extraordinarias que le fueran imposibles descubrir al momento de emitir el ajuste. Ante ello, somos del criterio que erró el Tribunal de Primera Instancia al no ordenar a One Alliance que realizara el pago del ajuste emitido ya que se trata de una deuda líquida, vencida y exigible".

---

[8] Entrada #220 de SUMAC.
[9] Entrada #227 de SUMAC.
[10] Entrada #235 de SUMAC.
[11] Entrada #244 de SUMAC.

De esa determinación, One Alliance recurrió ante el Tribunal Supremo mediante un recurso de apelación, que fue acogido como un recurso de *certiorari*, que fue denegado. One Alliance solicitó reconsideración en dos ocasiones, las cuales fueron declaradas No Ha Lugar. El mandato fue remitido el 11 de septiembre de 2023, por lo que la determinación advino final y firme. Asimismo, se toma conocimiento judicial de que el Tribunal de Apelaciones emitió otra Sentencia que atendió fundamentalmente las mismas controversias de un caso ventilado en la Región Judicial de Fajardo. Dicha Sentencia también es final y firme"[12].

Ante dichas determinaciones de hechos, el TPI concluyó que; procedía dictar *Sentencia* a favor de PRAPI, toda vez que las sentencias del TPI de Caguas y Fajardo surtían efecto de cosa juzgada en el caso de autos; que procedía declarar No Ha Lugar la *Moción de Sentencia Sumaria* presentada por One Alliance por adolecer de múltiples defectos procesales, y además, porque estaba vedada como cuestión de derecho por operación de la doctrina de cosa juzgada; que One Alliance no había demostrado la existencia del alegado fraude por parte de PRAPI; y que One Alliance actuó con temeridad al presentar su *Moción de Sentencia Sumaria*. Por tanto, el TPI de Carolina declaró Ha lugar la *Moción de Sentencia Sumaria* presentada por PRAPI y No Ha Lugar la *Moción de Sentencia Sumaria* presentada por One Alliance. Asimismo, dictó *Sentencia* y dispuso*:* que la anulación de las pólizas por One Alliance fue inválida; que One Alliance no se puede retractar de los ajustes y ofertas del *1st Claim Submission* y parte del *2nd Claim Submission*; y que PRAPI no tiene que devolverle a One Alliance suma alguna con relación al *1st Claim Submission*. Procede que One Alliance le pague a PRAPI $1,493,856.59 que le debe bajo el acuerdo suscrito entre las partes

---

[12] *Íd.*

respecto el *2nd Claim Submission;* ordena a One Alliance culminar el ajuste y el pago de las reclamaciones pendientes de propiedades incluidas en parte del *2nd Claim Submission* y la totalidad del *3rd Claim Submission* sitas en la Región Judicial de Carolina, en un término perentorio de 60 días. Además, ordena a One Alliance pagarle a PRAPI los intereses post-sentencia calculados al interés legal de 9.50%; pagarle a PRAPI los intereses pre-sentencia por morosidad, debido a que One Alliance no tenía razón legítima para negarse a satisfacer el ajuste y oferta que le cursó a PRAPI en el 2019; y por último, ordena a One Alliance pagarle a PRAPI honorarios de abogado por la cuantía de $20,000.00 conforme lo requiere el Artículo 27.165 del Código de Seguros, 26 LPRA § 2716e.

El 15 de julio de 2024, One Alliance presentó *Reconsideración.* En respuesta, el 5 de agosto de 2024, PRAPI sometió la *Oposición a Reconsideración.* El 7 de agosto de 2024, el TPI emitió una *Resolución* mediante la cual declaró No Ha Lugar la Reconsideración presentada por One Alliance.

Insatisfecho, One Alliance acudió ante nos e imputó al TPI la comisión de los siguientes errores:

ERRÓ EL TPI AL DECLARA "HA LUGAR LA DEMANDA ENMENDADA" ADJUDICANDO EN SUS MÉRITOS EL CASO, Y TAMBIÉN ORDENAR "AJUSTE DE PAGO" DE LAS PROPIEDADES PENDIENTES, ACEPTANDO TÁCITAMENTE QUE EXISTEN CONTROVERSIA SOBRE LA VALORACIÓN DE LAS PROPIEDADES PENDIENTES;

ERRÓ EL TPI AL ORDENAR EL PAGO DE $1,493,856.90 DÓLARES Y AL MISMO TIEMPO DECLARA "HA LUGAR LA DEMANDA ENMENDADA" DE LA CUAL SURGE CLARAMENTE QUE EL RECLAMO DE PR ASSET EN CUANTO A LAS PROPIEDADES AJUSTADAS Y OFRECIDAS DEL 2ND CLAIMS SUBMISSION EN LA REGIÓN DE CAROLINA ES LA CANTIDAD DE $184,683.28 DÓLARES Y NO EL PAGO ORDENADO;

ERRÓ EL TPI EN APLICAR LA REGLA 42.2 DE PROCEDIMIENTO CIVIL Y NO EMITIR DETERMINACIONES DE HECHOS EN CONTROVERSIA, CUANDO LA SENTENCIA SUMARIA PRESENTADA ES PARCIAL EN CUANTO AL 2ND CLAIMS SUBMISSION Y NO TOTAL; LAS CONTROVERSIAS RELACIONADAS [AL] VALOR DE LOS DAÑOS RECLAMADOS EN CUANTO A LAS PROPIEDADES PENDIENTES DEL 2DO Y 3ER CLAIM SUBMISSION, SON LA

RAZÓN POR LA CUAL NO PUEDE DICTARSE UNA SENTENCIA FINAL EN EL CASO.

## II.

### -A-

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que sólo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[13]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

> (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;

> (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[14].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando existan hechos materiales y esenciales controvertidos; cuando haya alegaciones afirmativas en la demanda que no han sido refutadas; cuando surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o cuando como cuestión de derecho, no procede[15]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[16].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[17]. Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de

---

[13] *Maldonado v. Cruz.*, 161 DPR 1, 39, (2004).
[14] *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004).
[15] *Íd.*, págs. 333-334.
[16] *Maldonado v. Cruz, supra.*
[17] *Íd.*, pág. 334.

Primera Instancia al determinar si procede una moción de sentencia sumaria[18].

Los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra;*

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[19].

**-B-**

La doctrina de cosa juzgada e impedimento colateral tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes[20].

En fin, el efecto inexorable de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y **aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa**[21].

El Tribunal Supremo de Puerto Rico, ha establecido como requisito adicional para que aplique la doctrina de cosa juzgada, que

---

[18] *Íd.*

[19] *Roldan Flores v. M Cuebas*, 199 DPR 664, 679 (2018).

[20] *P.R. Wire Prod. v. C. Crespo & Asoc.*, 175 DPR 139 (2008).

[21] *Méndez v. Fundación*, 165 DPR 253 (2005); *Pagán Hernández v. UPR*, 107 DPR 720, 732-733 (1978); *Mercado Riera v. Mercado Riera*, 100 DPR 940, 950 (1972).

la sentencia decretada en el primer pleito se dictó por un tribunal o agencia administrativa con jurisdicción[22]. En los procesos administrativos esta doctrina tiene aplicabilidad cuando se satisfacen los siguientes requisitos: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el caso anterior; y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad[23].

Por otro lado, el Alto Foro ha decretado que la aplicación de esta defensa no es absoluta ni automática. Ésta no se aplicará cuando estén presentes consideraciones de orden público; o cuando su aplicación derrota los fines de la justicia y produce resultados absurdos[24].

De otra parte, se reconoce en nuestro acervo jurídico la figura del impedimento colateral por sentencia y el fraccionamiento de causa, como modalidades de la doctrina de cosa juzgada. La doctrina de impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, y la determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas[25]. En dicho contexto, la aplicación de esta doctrina impide que se litigue en un litigio posterior **un hecho esencial** que fue adjudicado mediante sentencia final en un litigio anterior[26]. Por otro lado, la figura del fraccionamiento de causa aplica, cuando el

---

[22] *Vázquez v. A.R.P.E.*, 128 DPR 513, 536 (1991).
[23] *Beníquez et al. v. Vargas et al.* 184 DPR 210, (2012).
[24] *Parrilla Hernández v. Rodríguez Morales*, *supra*; *Meléndez v. García*, 158 DPR 77, 92 (2002); *Pagán Hernández v. U.P.R.*, *supra*, a la pág. 736; *Mercado Riera v. Mercado Riera*, *supra*, a la pág. 953.
[25] *Coop. Seg. Múlt. v. ELA*, 180 DPR 655, 672-673 (2011).
[26] *P.R. Wire Prod. v. C. Crespo & Asoc.*, *supra*, a la pág. 152.

demandante tiene varias reclamaciones, **que surgen de un mismo evento**, contra un mismo demandado y presenta una de esas reclamaciones en un primer pleito. La doctrina de fraccionamiento de causa le impide presentar **otro pleito contra el mismo demandado por las otras reclamaciones**. La modalidad de fraccionamiento de causa tiene el propósito de promover el fin de las controversias judiciales y evitar las molestias continuas, que ocasiona a una parte, la presentación sucesiva de pleitos sobre el mismo asunto. Esta modalidad procede, cuando el demandante obtiene una sentencia en un primer pleito y luego radica una segunda acción contra la misma parte **por otra porción de esa misma reclamación**[27].

**-C-**

Tras la devastación y desasosiego que invadió a Puerto Rico por el paso de los huracanes Irma y María, la Asamblea Legislativa enmendó el Código de Seguros mediante la aprobación de la Ley Núm. 247 de 27 de noviembre de 2018 (Ley Núm. 247-2018). Dicho estatuto, entre otras cosas, añadió los Arts. 27.164 y 27.165 al Capítulo 27 del Código de Seguros, el cual regula todo lo concerniente a las "Prácticas Desleales y Fraudulentas"[28]. Cabe destacar que la exposición de motivos de la referida Ley persigue brindar herramientas y protecciones adicionales para beneficio de los asegurados y así facilitar el proceso de recuperación de la Isla. La aprobación de esta pieza legislativa surgió como consecuencia de la respuesta dada por parte de la industria de seguros ante la catástrofe sufrida en Puerto Rico[29].

A tenor con la Exposición de Motivos del estatuto, las aseguradoras han incurrido en retrasos, malos manejos y reiteradas

---

[27] *Presidencial v. Transcaribe*, 186 DPR 263, 277-278 (2012).
[28] Véase, 26 LPRA sec. 2701 *et seq.*
[29] Véase, Exposición de Motivos, Ley Núm. 247-2018, *supra.*

violaciones a las disposiciones del Código de Seguros de Puerto Rico. Puntualiza que por ello las nuevas disposiciones proveen un remedio civil que busca proteger al asegurado contra acciones de mala fe por parte de las aseguradoras. Además, indica que también proveen mayor acceso a la justicia al obligar a las compañías aseguradoras, que obran de mala fe, el pago de honorarios de abogados a favor de los aseguradores[30].

**III.**

En su primer señalamiento de error, la parte apelante esboza que resulta improcedente que el TPI de Carolina emitiera órdenes de pago sobre las reclamaciones y, a su vez, ordene continuar con el "ajuste de pago". Razona que esas órdenes son inconsistentes porque reconoce tácitamente que existe controversia sobre las valoraciones de las propiedades pendientes. En cuanto al segundo señalamiento de error, alega que el TPI de Carolina incidió al ordenar el pago global sobre propiedades inmuebles que no están sitas en la Región Judicial de Carolina. Por último, apunta en su tercer señalamiento de error, que el foro primario erró en aplicar la Regla 42.2 de Procedimiento Civil y no emitir determinaciones de hechos en controversia, al haber declarado ha lugar la *Sentencia Sumaria* presentada por PRAPI cuando existen controversias de propiedades pendientes del 2*nd* y 3*rd claim submission.*

Examinada de *novo* la moción de sentencia sumaria presentada por PRAPI, así como la moción en oposición presentada por One Alliance, concluimos que las partes cumplieron con las exigencias de la Regla 36.3 de Procedimiento Civil[31]. A tenor con lo anterior, nos corresponde evaluar si el TPI aplicó correctamente el derecho. Veamos.

---

[30] *Íd.*
[31] 32 LPRA Ap. V.

Tras un examen minucioso del legajo apelativo y el expediente electrónico, colegimos que las determinaciones de hechos formuladas por el TPI de Carolina en el dictamen apelado encuentran apoyo en la prueba que obra en el expediente y en la aplicación correctamente de la doctrina de cosa juzgada.

Por estar intrínsicamente relacionados, atenderemos los tres errores de forma simultánea. Fíjese que, en este caso no existe controversia de hechos en cuanto a que las partes acordaron atender la reclamación en tres (3) fases: *1st, 2nd y 3rd Claim Submission;* que One Alliance pagó la totalidad del *1st Claim Submission*; sobre el *2nd Claim Submission,* One Alliance le sometió a PRAPI el ajuste correspondiente y las partes llegaron a un acuerdo para todas las 64 propiedades del *2nd claim submission*, **incluyendo propiedades sitas en la región judicial de Carolina**, luego de la aplicación de los correspondientes deducibles, el ajuste, oferta y promesa de pago de One Alliance a PRAPI para 29 propiedades; PRAPI aceptó el referido ajuste y oferta de pago de parte de One Alliance. PRAPI cumplió con las disposiciones del Artículo 7(d) de la Regla XLVII (47) del Reglamento del Código de Seguros[32], y sometió a One Alliance las Declaraciones de Pérdida (*Proof of Loss*), y PRAPI le solicitó a One Alliance que procediera a realizar el pago de las partidas de daños a la propiedad por las sumas cubiertas por el *2nd claim submission.*

Es decir, no existe una controversia real sustancial en cuanto a ningún hecho material, por lo que solo restaría por resolver una controversia de estricto derecho[33]. En este caso, la controversia de derecho gira en torno a la aplicabilidad de la doctrina de cosa juzgada, a base de las sentencias de Caguas y Fajardo, las cuales advinieron finales y firmes, y resuelven las mismas alegaciones

---

[32] Reglamento 2080.
[33] *Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 314, (2021).

esbozadas por las partes, PRAPI y One Alliance. Además, concedieron los remedios solicitados en las demandas enmendadas, las cuales surgieron de la demanda original presentada en el TPI de San Juan en el 2019.

Es evidente que, aunque se trata de distintas regiones judiciales, las alegaciones, las controversias, la prueba documental y los remedios solicitados por ambas partes son los mismos. En este caso, lo único que varía en los escritos es la descripción de las propiedades en controversia y las cuantías solicitadas de cada una.

Al revisitar la norma reiterada por nuestro Tribunal Supremo sobre la doctrina de cosa juzgada, deben coincidir los siguientes elementos: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el caso anterior; y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad[34]. En resumen, la doctrina de cosa juzgada requiere que, entre el caso resuelto mediante sentencia y en el caso en que se invoca, concurra la más perfecta identidad entre las cosas, causas, personas litigantes y la calidad en que lo fueron[35]. Nos percatamos que cada uno de los elementos de la doctrina de cosa juzgada son de aplicabilidad. Colegimos que el dictamen que emite el TPI de Carolina es correcto en derecho, por lo que acogemos las determinaciones de hechos por referencia y las hacemos formar parte de nuestro dictamen.

Consonó con ello, resolvemos que no le asiste la razón a One Alliance, pues, ninguno de los errores fue cometido. Como mencionáramos anteriormente, el foro primario resolvió conforme a

---

[34] *Beníquez et al. v. Vargas et al.* 184 DPR 210, (2012).
[35] *Pérez Droz v. A.S.R.*, 184 DPR 313, (2012).

las Sentencias finales y firmes de Caguas y Fajardo y en su Sentencia, el TPI resuelve todas las controversias, entre todas las partes, de forma tal que no quede pendiente nada más que la ejecución de ésta. Fíjese que la Sentencia aquí apelada resuelve sobre la anulación de las pólizas por One Alliance, que fue inválida; que One Alliance no se puede retractar de los ajustes y ofertas del *1st Claim Submission* y parte del *2nd Claim Submission*; y que PRAPI no tiene que devolverle a One Alliance suma alguna con relación al *1st Claim Submission*. Por tanto, el pago ordenado del *2nd Claim Submission* por estas regiones judiciales es global y no solo de la Región Judicial de Carolina en particular. Dicho de otra forma, el pago de $1,493,856.59 que One Alliance tiene que realizar corresponde a la oferta de pago aceptada por PRAPI sobre veintinueve (29) propiedades del *2nd Claim* Submission. A su vez, ordena a One Alliance a culminar el ajuste y pago de las reclamaciones de propiedad pendientes en el *2nd Claim Submission* y culminar la totalidad del ajuste y pago de las propiedades incluidas en el *3rd Claim Submission*, sitas en Carolina, en un término perentorio.

Apuntalamos que, el foro primario cumplió con la Regla 42.1 de las Reglas de Procedimiento Civil[36], al realizar determinaciones que resuelven finalmente la cuestión litigiosa, lo que constituye una sentencia final.

Cónsono con lo anterior, colegimos que ninguno de los errores alegados fue cometido, así como la doctrina de cosa juzgada eliminó cualquier controversia existente entre las partes del caso de epígrafe. De este modo, las sentencias finales y firmes emitidas por los tribunales de primera instancia, regiones judiciales de Caguas y

---

[36] 32 LPRA Ap. V, R. 42.1, define lo que constituye una sentencia y dispone lo siguiente: El término **"sentencia"** incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la cual pueda apelarse.

Fajardo, pusieron fin a las controversias alegadas por One Alliance en su recurso y expuestas como errores. Como vemos, al cumplirse con todos los requisitos de la doctrina de cosa juzgada, no procede dilucidar nuevamente los méritos de la controversia que está ante la consideración del foro judicial[37].

**IV.**

Por los fundamentos antes expuestos, se ***confirma*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[37] *Pagán Hernández v. U.P.R., supra; Bolker v. Tribunal Superior*, 82 DPR 816, 834 (1961).